UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANA L. KELLY,

                Plaintiff,

             -against-

CITY OF PEEKSKILL, NEIGHBORHOOD
WATCH ASSOCIATION PRESIDENT;
VICTOR PIZELLA BUILDING DEPT.;
WILLIAM FLORENCE CITY ATTORNEY;
DAVID PARR; FORMER MAYOR JOHN
TESTA,

                Defendants.

1:24-CV-2279 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Diana L. Kelly, who alleges that she is a homeless resident of Westchester County, and who is appearing *pro se*, filed this action. She invokes the court's federal-question jurisdiction and states that the federal constitutional or federal statutory bases for her claims are her "natural rights are in violation[,] [her] constitutional rights to live without interference, [her] liberties [*sic*]." (ECF 1, at 2.) Plaintiff seeks $10 million in damages "and a cease [and] desist order with immediate access to the federal court for remedy, each defendant['s] surety bond [*sic*]." (*Id.* at 6.) She sues: (1) the City of Peekskill; (2) "Neighborhood Watch Association President"; (3) Victor Pizella, who appears to have been, at one time, a Building Inspector for the City of Peekskill; (4) William Florence, Esq., whom Plaintiff describes as a current or former "City Attorney"; (5) David Parr, her former neighbor; and (6) Former Peekskill Mayor John Testa. The Court construes Plaintiff's complaint as asserting claims of violations of Plaintiff's

federal constitutional rights, and of conspiracy to violate those rights, under 42 U.S.C. §§ 1983 and 1985, as well as claims under state law.[1]

By order dated March 27, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead her claims in an amended complaint.

### STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

---

[1] Plaintiff has filed, with her complaint, an application for the Court to request *pro bono* counsel. (ECF 6.) She has also filed a letter (ECF 4), which the Court construes as a supplement to the complaint.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff seems to allege, in her complaint and supplement, that at least some of the defendants have retaliated against her for bringing a previous civil action in this court, and that at least some of the defendants have conspired to violate her federally protected rights. Accordingly, before the Court summarizes Plaintiff's allegations in her complaint and supplement, the Court will summarize Plaintiff's litigation history with respect to her previous civil action in this court.

**A.**     ***Kelly v. City of Peekskill*, 7:05-CV-6472 (CLB) (GAY)**

In 2005, Plaintiff and another individual brought a *pro se* civil action in this court in which their original complaint named the City of Peekskill and "The Business Improvement District" as defendants. *See Kelly v. City of Peekskill*, 7:05-CV-6472 ("*Kelly I*"), at 1 (S.D.N.Y.) (original complaint, unavailable on CM/ECF docket). In *Kelly I*, the plaintiffs asserted claims arising from the defendants' alleged denial of permits for the plaintiffs to sell their wares at a vending space at a Peekskill farmers' market and at a Peekskill antique market. By order dated

3

July 18, 2005, then-Chief Judge Michael B. Mukasey directed the plaintiffs in *Kelly I* to submit an amended complaint; Judge Mukasey granted the plaintiffs leave to: (1) replead their claims under 42 U.S.C. § 1983 against the City of Peekskill, (2) name individuals as defendants as to their claims under Section 1983, (3) allege facts sufficient to state a claim of First Amendment retaliation under Section 1983, (4) allege facts sufficient to state a claim of an equal-protection violation under Section 1983, and (5) allege facts sufficient to state a claim of retaliation under Title II of the Civil Rights Act of 1964. *Kelly I*, 7:05-CV-6472, 4 (S.D.N.Y. July 18, 2005) (unavailable on CM/ECF docket).

In response to that order, the plaintiffs filed an amended complaint asserting similar allegations, and *Kelly I* was reassigned to District Judge Charles L. Brieant. The amended complaint named the following as defendants: (1) the City of Peekskill; (2) then-Peekskill Mayor John Testa; (3) then-Peekskill Deputy City Clerk Sandra Dubsky; (4) then-Peeksill City Manager Daniel W. Fitzpatrick; (5) then-Peekskill Chief of Police Tumalo; (6) then-Peekskill Police Lieutenant Gary Dasecke; (7) "Business Improvement District" (8) "BID President" Lou M. Ann Curtain; (9) Mark Cabaña; (10) "Vice President of B.I.D."; (11) Marilyn Ettinger; and (12) "BID Official." In a memorandum and order dated September 5, 2007, Judge Brieant granted the defendants' motion for summary judgment.[2] *Kelly I*, 7:05-CV-6472, 32 (S.D.N.Y. Sept. 5, 2007) (unavailable on CM/ECF docket). Plaintiff appealed. On January 22, 2008, the United States Court of Appeals for the Second Circuit dismissed that appeal. *Kelly v. City of Peekskill*, No. 07-4532-cv (2d Cir. Jan. 22, 2008).

---

[2] One of the attorneys that represented the defendants in *Kelly I* was William Florence, Esq. Plaintiff has named Florence as a defendant in the present action.

B.  **The present complaint and supplement**

Plaintiff alleges, in her present complaint, that the events that are the bases for her claims occurred, at the latest, on or about March 19, 2024, at her former residence at 434 Simpson Place, in Peekskill, New York. Plaintiff also alleges the following:

> I am presently being watched and surveilled over the internet. As a result, of retaliation, due to documentation I have concerning another case. These public officials are using their resources presently to deny me services. I have been under surveillance since they burnt me out of my house [at] 434 Simpson Pl., Peekskill N.Y. William Florence has used his political influence to remove evidence [and] verification concerning retaliation. He has also had court documents removed from being filed in [*Kelly I*]. I filed a cease [and] desist order with . . . Judge Brieant, during my case proceedings, [a]fter cease [and] desist was filed, I never received any documentation for this case. Following this case I was burnt out of our home in Peekskill N.Y. All records relating to this arson have been removed. Also I was poisoned by a Peekskill [d]octor which lead to [b]rain [s]urgery. Mr. Florence, Testa, etc. proceeded to use their influence to have me cut off of Social Security Disability. Mr. Florence also instructed staff from City Hall to harass [and] retaliate. My Section 8 voucher was detained, making me homeless. The retaliation continues to this day March 21, 2024. Mr. William Florence has continually used his influence both politically [and] personally to bring adverse actions upon me and my family. I seek [an] immediate remedy that the adverse actions against my family and [me] may stop. He has done everything within his means to cripple me and leave me dead in the streets. If not for God [and] my ancestors I would be in a[n] insane asylum, homeless, I am, but not hungry by God's grace. I pray that the Court may investigate and give me [an] immediate remedy that I may live the rest of my life [with] my family with peace.

(ECF 1, at 5-6.)

Plaintiff's supplement to her complaint states the following:

> [*Kelly I*] is related to the new case I'm filing. During the process of [*Kelly I*], I filed a cease [and] desist order with Judge Brieant, due to the defendants retaliating by attacking, sabotaging and surveilling our home at 434 Simpson Pl. Peekskill N.Y. Because I filed [*Kelly I*,] the defendants[] made our home a target. We were watched and [were] under constant investigation by City officials. They even entered our house to [intimidate] me and my children. I contacted the Court to submit a motion to cease [and] desist, but never received a response. I wrote Judge Brieant and found out he had passed away. During this time period, I required [e]mergency [b]rain [s]urgery. The retaliation became worse. [The Neighborhood Watch Association ("NWA")] began targeting our home. Calling it [t]errible [n]usance property. This meant the niggers [l]ive here. They incorporated any and everyone. They even sent strangers to knock on the door.

5

> They trade us fear out our attic. Again the attacks and egregious retaliation was unmonitored, especially after my motion wasn[']t acknowledged. Police harassed my children throughout Peekskill. . . . Mr. William J. Florence [and] former Mayor Testa used Section 8, Social Security, [c]ode enforcement, [p]arking violations and every resource available to retaliate. I had two vehicles['] lugnuts unfastened, which crashed with myself [and] the children inside. They have done everything to destroy me. I thought they were only trying to hurt me, but realized they tried to kill me. During this time[,] I had emails between NWA and City officials emailing about burning me out and about writing up new city codes and ordinances to remove our [f]amily out of the area. . . . . [T]he City [and] NWA stated that they destroyed emails, this isn[']t true I have the emails they said are destroyed. This is another reason why they targeted my google and gmail accounts. They were aware that I have the emails. . . . I was questioned by Leesther Brown[,] a [f]emale [l]iason for Mayor Testa. Please review these people. They have a history of repeated racism, retaliation and egregious acts. They recently attacked my son [and] granddaughter (Peekskill Police) after I contacted the Mayor of Peekskill . . . requesting William Florence's surety bond number.
>
> I ask for [an] immediate remedy [and] cease [and] [d]esist against all defendants. They are blocking social services [b]enefits, mental health [b]enefits and other resources I require to live and recover in peace. . . .
>
> Defendants have utilized (white supremacy) tactics [and] [r]acism to acquire support in those egregious tactics. I am disabled and can barely walk any distance. I would like to enjoy the rest of my [l]ife without interference [and with] some peace. . . . David Parr, [n]eighbor[,] videotaped house on fire, seeking a reward, this video has disappeared. I am continually remembering incidents that Mr. Florence, City of Peekskill are responsible for. I am still being stalked and my life is being interfered with.

(ECF 4.)

## DISCUSSION

**A.      Claims on behalf of others**

The Court must dismiss Plaintiff's claims that she asserts on behalf of others, including members of her family. The statutory provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and

citation omitted). In addition, "because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *Cheung v. Youth Orch. Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Plaintiff does not allege that she is an attorney, therefore, she cannot assert claims in this action on behalf of others, including members of her family. The Court therefore dismisses, without prejudice, any claims that Plaintiff raises in this action on behalf of anyone else, including members of her family.

**B.     The City of Peekskill**

The Court understands Plaintiff's complaint and supplement as asserting claims under 42 U.S.C. §§ 1983 and 1985 against the City of Peekskill. When a plaintiff sues a municipality, such as the City of Peekskill, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). To state a claim of conspiracy under Section 1985 against a municipality, the plaintiff must allege that the municipality's "official custom or

policy . . . relating to failure to train or to other matters stem[s] from or result[s] in a conspiracy implicating the [municipality] itself." *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979).

Plaintiff alleges nothing to suggest that a policy, custom, or practice of the City of Peekskill caused a violation of her federally protected rights or was related to a conspiracy to violate her federally protected rights. The Court therefore dismisses Plaintiff's claims under Sections 1983 and 1985 against the City of Peekskill for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead her claims under Sections 1983 and 1985 against the City of Peekskill in an amended complaint in which she alleges facts that show that a policy, custom, or practice of the City of Peekskill caused a violation of her federally protected rights and/or was related to a conspiracy to violate those rights.

**C.    Claims of First Amendment retaliation**

The Court also understands Plaintiff's complaint and supplement as asserting claims of First Amendment retaliation under Section 1983 against Florence, Pizella, and Testa arising from Plaintiff's filing of *Kelly I*. To state such a claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). Thus, the filing of a lawsuit is First Amendment protected activity. *See Espinal* 558 F.3d 128-29. As to this type of claim, "[a] plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the

protected activity was followed closely by the adverse action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

Plaintiff's filing of *Kelly I* was clearly protected activity. Plaintiff, however, has not alleged facts sufficient to show that it was Florence, Pizella, and/or Testa who caused the alleged adverse actions that were taken against her; she merely alleges, in a conclusory manner, that it was them.[3] In addition, Plaintiff has not alleged facts sufficient to show a causal connection between her filing of *Kelly I* – which was filed in 2005, and that ended, at the latest, in 2008, when the Second Circuit dismissed Plaintiff's appeal – and the alleged adverse actions, which Plaintiff asserts occurred, at the latest, on or about March 21, 2024, approximately 16 years later. Moreover, it appears that at least Testa, and possibly also Florence and Pizella, were no longer associated with the City of Peekskill by the time the alleged adverse actions occurred. The Court therefore dismisses Plaintiff's claims of First Amendment retaliation under Section 1983 against Florence, Pizella, and Testa, arising from Plaintiff's filing of *Kelly I*, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which she alleges facts sufficient to support such a claim against these individuals.

**D.    Claims of conspiracy**

The Court further construes Plaintiff's complaint and supplement as asserting claims of conspiracy under Sections 1983 and 1985 against the individual defendants. To state a claim of conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an

---

[3] "To hold a state [or municipal] official liable under [Section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official. . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). To state a claim of conspiracy under Section 1985(3), a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of her right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [Section 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted).

Vague and unsupported assertions of a claim of conspiracy, either under Section 1983 or Section 1985, will not suffice to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

Plaintiff's allegations regarding a conspiracy between the individual defendants are conclusory, vague, and without detail. Plaintiff seems to allege, with little or no factual support or causal connection, that because she filed *Kelly I*, the individual defendants conspired to harass and injure her, which included a conspiracy to destroy Plaintiff's Peekskill home by arson, on or about March 21, 2024. The Court therefore dismisses Plaintiff's claims of conspiracy under Section 1983 and Section 1985 for failure to state a claim on which relief may be granted. *See*

§ 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead these claims in an amended complaint in which she alleges facts sufficient to state them.

### LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under Section 1983 and/or Section 1985, the Court grants Plaintiff 30 days' leave to replead her claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order; the judgment will dismiss Plaintiff's claims that she asserts on behalf of others without prejudice, dismiss Plaintiff's own claims under federal law with prejudice for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), and will decline to consider, under the Court's supplemental jurisdiction, Plaintiff's own claims under state law, *see* 28 U.S.C. § 1367(c)(3). It will also deny Plaintiff's application for the Court to request *pro bono* counsel as moot.

## CONCLUSION

The Court dismisses this action for the reasons set forth above. The Court, however, grants Plaintiff leave to replead her claims in an amended complaint, as specified above, to be filed within 30 days of the date of this order.[4]

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order; the judgment will dismiss Plaintiff's claims that she asserts on behalf of others without prejudice, dismiss Plaintiff's own claims under federal law with prejudice for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and will decline to consider, under the Court's supplemental jurisdiction, Plaintiff's own claims under state law, *see* 28 U.S.C. § 1367(c)(3). It will also deny Plaintiff's application for the Court to request *pro bono* counsel as moot.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Court directs the Clerk of Court to hold this matter open on the docket until a judgment is entered.

SO ORDERED.

Dated:  June 21, 2024
        New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge

---

[4] The Court will not address Plaintiff's application for the Court to request *pro bono* counsel (ECF 6) until after the deadline for Plaintiff's filing of an amended complaint in compliance with this order.