UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANA KELLY,

               Plaintiff,

-against-

WILLIAM J. FLORENCE, JR.; JOHN TESTA;
VICTOR PIZZELLA; TINA BONGAR,

               Defendants.

1:24-CV-2279 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      By order dated June 21, 2024, the Court dismissed this action, but granted Plaintiff, who appears *pro se* and proceeds *in forma pauperis* ("IFP"), 30 days' leave to file an amended complaint as specified in that order. (ECF 8.) On August 9, 2024, Plaintiff filed an amended complaint in response to the Court's June 21, 2024 order.[1] (ECF 9.) On December 2, 2024, Plaintiff filed a submission that, though styled as a second amended complaint, the Court construes as a supplement to Plaintiff's first amended complaint. (ECF 11.) In the amended complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 and 18 U.S.C. § 242, and she seeks damages and what appears to be declaratory relief and injunctive relief. In her supplement to her amended complaint, Plaintiff asserts claims under Sections 1983 and 242, 28 U.S.C. § 1343(3), Rule 37 of the Federal Rules of Civil Procedure, and Title XI of the Civil Rights Act of 1964, 42 U.S.C. § 2000h-4, and seeks damages and injunctive relief. Plaintiff names as defendants in her amended complaint: (1) William J. Florence Jr., whom she describes as "Counsel for the City of

---

[1] On October 21, 2024, Plaintiff filed a letter in which she seems to request an extension of time. (ECF 10.) To the extent that Plaintiff seeks an extension of time to file an amended complaint in response to the Court's June 21, 2024 order, the Court denies that request, as Plaintiff filed an amended complaint on August 9, 2024. (ECF 9.)

Peekskill, [p]ublic officials, and represents code enforcement and all levels of public officials [*sic*]"; (2) Victor Pizzella, whom she describes as a "[c]ode enforcement official . . . [and] the supervisor of agents issuing housing code violations"; (3) John Testa, whom she describes as the "[f]ormer . . . Mayor [of the City of Peekskill] who[,] at the time in question, presided over all Peekskill City officials"; and (4) Tina Bongar, whom she describes as the "Neighborhood Watch President, constant surveillance and violation of 14th [A]mendment of the U.S. Constitution. [*sic*]" (ECF 9, at 1.) She names the same individuals as defendants in her supplement.[2] (ECF 11, at 1.) Plaintiff asserts, in her supplement, that "[t]he actions described include unwarranted code violations, denial of access to necessary services, improper termination of disability benefits, and obstruction of access to court records." (*Id.*) In addition to the claims mentioned above, the Court construes Plaintiff's amended complaint and supplement as asserting claims under state law, including claims under New York's Freedom of Information Law ("FOIL"). For the reasons set forth below, however, the Court dismisses this action.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

---

[2] Plaintiff sues the defendants in their individual and official capacities. (ECF 9, at 1; ECF 11, at 1.) Because Florence, Testa, and Pizzella appear to be current or former officers of the City of Peekskill, and Bongar appears to be a private citizen, the Court understands Plaintiff's amended complaint and supplement as asserting claims against Florence, Testa, and Pizzella in their official capacities, as officers of the City of Peekskill, as well as in their individual capacities.

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id*. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

### A.    The Court's June 21, 2024 order

The Court, in its June 21, 2024 order, dismissed without prejudice any claims that Plaintiff raised on behalf of anyone else, including members of her family. (ECF 9, at 6-7.)

In that same order, having construed Plaintiff's original complaint and its supplement as asserting claims under 42 U.S.C. § 1983 and § 1985, the Court also dismissed Plaintiff's claims under those statutes against the City of Peekskill for failure to state a claim on which relief may be granted. (*Id.* at 7-8.) The Court, however, granted Plaintiff leave to replead her claims against the City of Peekskill under Sections 1983 and 1985 in an amended complaint in which she was to allege facts showing that a policy, custom, or practice of the City of Peekskill caused a violation of her federally protected rights and/or was related to a conspiracy to violate those rights. (*Id.* at 8.)

The Court further construed Plaintiff's original complaint and it supplement as asserting claims of First Amendment retaliation under Section 1983 against Florence, Pizzella (previously spelled as "Pizella"), and/or Testa – who were all named as defendants in Plaintiff's original complaint – arising from Plaintiff's filing of a previous civil action in this court known as *Kelly v. City of Peekskill*, 7:05-CV-6472 (CLB) (GAY) ("*Kelly I*"). (*Id.*) The Court dismissed those claims for failure to state a claim on which relief may be granted, but granted Plaintiff leave to replead those claims in an amended complaint in which she was to allege facts sufficient to support such a claim against those individuals. (*Id.* at 8-9.)

The Court additionally construed Plaintiff's original complaint and supplement as asserting claims of conspiracy under Sections 1983 and 1985 against the individual defendants named in the original complaint. (*Id.* at 9.) The Court dismissed those claims for failure to state a claim on which relief may be granted, but granted Plaintiff leave to replead those claims in an amended complaint in which she was to allege facts sufficient to state those claims. (*Id.* at 9-11.)

4

B.    **Plaintiff's amended complaint**

Plaintiff, in her amended complaint, alleges the following:

On or about May 2024 I searched for emails that were blocked or erased concerning the actions of the defendants toward the plaintiff. Based on the emails, Plaintiff was searching for information concerning incident reports on or about November 2006 and forward. Plaintiff made numerous complaints to at the time Mayor Testa, but he did nothing to investigate or correct the matter.

During my questioning in response to the production of the emails, the City [C]lerk of Peekskill advised [P]laintiff that the City did not have [a] formal email retention policy in place[] during the relevant time period [and] that it [was] within the []sole discretion of the city staff and elected officials to delete emails and[,] [t]herefore, both [the] Mayor and all members of the City Common Council[] do not have any pre litigation emails regarding 434 Simpson Place, Peekskill[,] New York 10566[3][] concerning "[t]errible nuisance property" [p]er Tina Bongar['s] emails to the [C]ommon [C]oun[ci]l and the [Neighborhood Watch Association] community. At that time [I] had a copy. . . . Which they say no longer exist[s] in email or documented.

Plaintiff also contends, based on the emails in . . . [her] personal files, members of the City [C]ommon Council sent and received a substantial amount of relevant emails, which apparently have been destroyed. . . .

Tina Bongar, [President of the] Neighborhood [W]atch [Association], made statements in the emails inciting hate, stating that they were plan[ing] a [bonfire], in about a month later our home[4] was set on fire while I was out of town. Before the fire[,] a cease and desist order was filed in the U.S. District Court, White Plains, New York[,] to stop City Officials, Code Enforcement and [the] Neighborhood [W]atch [Association] from their constant harassment, retaliation and discrimination. After the cease and desist order was issued[,] Defendants proceeded and burn[ed] the house down.[5]

After the fire[,] City [o]fficials proceeded to cancel my housing voucher in retaliation to me filing my case with the court. White Plains, New Yor[k], Legal

---

[3] Plaintiff has attached to her amended complaint a copy of a report from the Peekskill Fire Department indicating that a fire took place at 434 Simpson Place, Peekskill, New York, on July 29, 2008. (ECF 9, at 27-28.)

[4] Plaintiff's former home appears to have been located at 434 Simpson Place, Peekskill, New York.

[5] Plaintiff seems to allege that a "cease and desist" order was issued by this court in *Kelly I*, and/or in another civil action in this court in which Plaintiff was not a party, *DMAC LLC v. City of Peekskill*, 7:09-CV-5093 (JCM). The dockets for both of those closed actions, however, do not indicate that such an order was issued by the court in either of those actions.

5

> [A]id [S]ervices was contacted[,] at which time they notified City officials to return the subsidized housing voucher. This request was also ignored, Ultimately, I wrote a letter to Mr. Shaun Donovan, [then-Secretary of the United States Department of] Housing and Urban Development [("HUD")][,] who notified City officials that they did not follow legal protocols or regulations concerning denial of voucher. H[U]D instructed Section 8, City Attorney William J. Florence[,] and officials to return the housing voucher immediately or HUD would . . . [take] legal actions.
>
> After the [f]ire and [the] [i]llegal[] withdraw[l] [of] the section 8 voucher[,] . . . William J. Florence, Jr. . . . influenced the Social Security [A]dministration. . . . The Social Security office . . . discontinued my disability benefits without any formal notices. Nor did they follow [S]ocial [S]ecurity procedures as to why they were cancelling my benefits.
>
> In or about 2011 I provided the [Social Security] [A]dministration with documentation verifying that I had not taken part in any fraudulent, [f]inancial history. Although [I] provided the legal documents to [the Social Security Administration], I was denied and forced to file an appeal to Honorable Judge Micheal Rodriquez.[6]

(ECF 9, at 2-3.)

Plaintiff alleges that Florence "is influential in the [C]ommon [C]oun[ci]l and [with] the Mayor." (*Id.* at 3-4.) She sues him for "his constant retaliatory [h]arassment and discriminat[ory] acts and for the destruction of emails and the denial of the right to truth and evidence." (*Id.* at 4.)

She also alleges that Pizzella "is responsible for representing all violation tickets within the [City of Peekskill] issued by code enforcement. Pizzella['s] office issued numerous violations on and against the property in retaliation [for Plaintiff's] complaints."[7] (*Id.*)

---

[6] Plaintiff has attached to her amended complaint a February 14, 2012 decision of Social Security Administrative Law Judge Michael A. Rodriguez that was fully favorable to Plaintiff with regard to her Social Security benefits. (ECF 9, at 15-23.)

[7] Plaintiff has attached to her amended complaint copies of certificates of dispositions issued by the Peekskill City Court on April 1, 2024, that state the following: (1) on February 9, 2010, the charge against Plaintiff of having weeds overgrown on her property was withdrawn; (2) on November 10, 2009, Plaintiff was arrested and charged with: (a) not locking a vacant structure, and (b) having an unsecured fire-damaged structure – those charges were withdrawn on March 16, 2010; (3) on April 25, 2001, proceedings in which Plaintiff was charged with what appears to be failing to remove snow or ice from her property were adjourned in contemplation

Plaintiff further alleges that Bongar has "constant[ly] harass[ed] [her,] . . . inciting and distributing hate messages." (*Id.*) Bongar's "actions resulted in [Plaintiff's] house being set on fire." (*Id.*)

Plaintiff additionally alleges that:

> [d]ue to his negligence of retaining the email evidence[,] [former Mayor Testa] has denied [Plaintiff's] rights to [t]ruth of evidence. As a result[,] his neglectfully destroying relevant email evidence against [Plaintiff's] claims of harassment and retaliation from the City officials he supervises. [*sic*] He has the authority to stop all violations of [Plaintiff's] constitutional rights.

(*Id.* at 5.)

### C. Plaintiff's supplement

In her supplement, Plaintiff asserts that the defendants brought about a "sustained campaign of harassment, retaliation, and procedural misconduct" against her. (ECF 11, at 1.) She asserts that this "campaign" is the basis for her claims of due process and equal protection violations and of First Amendment retaliation, as well as of her claims of intentional infliction of emotional distress, procedural abuse, and malfeasance. (*Id.*) Plaintiff alleges that defendants' actions have caused "exacerbation of [her] preexisting health conditions, including spinal meningitis and [a] cerebral spinal fluid leak; (b) severe emotional distress and financial hardship; and (c) reputational damage cause by false accusations and public misrepresentation." (*Id.*) She also alleges that her "ongoing medical challenges, including upcoming back surgery, further highlight the physical and emotional toll caused by the defendant[s'] misconduct." (*Id.*) Plaintiff requests the appointment of counsel to represent her in this action.

---

of dismissal; (4) on February 9, 2010, two charges of Plaintiff having trash throughout her property were withdrawn; and (5) on February 9, 2010, the charge of Plaintiff having overgrown weeds and hedges on her property was withdrawn. (ECF 9, at 29-34.)

7

Plaintiff alleges that this "case arises from a sustained campaign of retaliation and procedural abuse by officials from the City of Peekskill, including Code Enforcement Supervisor Victor Pizzella and neighborhood activist Tina Bongar." (*Id.* at 3.) Their "actions resulted in irreparable harm, including harassment, baseless code violations, denial of disability benefits, and obstruction of [Plaintiff's] attempts to repair [her] property at 434 Simpson Place." (*Id.*) Plaintiff asserts that the defendants "repeated[ly] deni[ed] [Plaintiff's] rights to due process and protection from unreasonable searches and harassment," issued "[b]ogus code violations and obstruct[ed] . . . property repairs as acts of retaliation," and also "[f]ail[ed] to notify [Plaintiff] or [her] family about fire incidents, investigations, or outcomes." (*Id.*) She further asserts that they issued "[f]alse media reports attributing an 'electrical fire' to [Plaintiff's] property[,] despite the absence of electricity, causing reputational harm." (*Id.*)

Plaintiff alludes to statements made by Bongar, "a prominent member of the Westside Neighborhood Association." (*Id.* at 6.) She alleges that Bongar's activities took place between May 2005 and December 2012, and included "organizing actions against community developers, which closely align[s] with the harassment and targeting faced by . . . [P]laintiff at 434 Simpson Place." (*Id.*) "Bongar referenced her involvement in pursuing participation in court cases against developers," which is a strategy that "mirrors the blueprint of actions taken against [Plaintiff], including the alleged misuse of code enforcement procedures and retaliatory actions." (*Id.*) Plaintiff further refers to an email "describing the alleged arsons at 434 Simpson Place." (*Id.*) According to Plaintiff, Peekskill "City officials, including . . . Pizzella, were reported to have denied [Plaintiff] and her family assistance from the Red Cross following the fires." (*Id.*) "[T]here were procedural failures regarding the investigation of the fires and proper notifications

to the affected family." (*Id.*) She states that "[t]he email highlights the role of . . . Florence and other officials in orchestrating targeted actions against . . . [P]laintiff." (*Id.*)

Plaintiff asserts that she has attached to the supplement documents from the Peekskill Fire Department concerning a fire that took place at 434 Simpson Place on July 29, 2008, but she states that there are no records concerning a second fire that took place at that location. (*Id.*) "The email correspondence . . . alleges that the fires were part of a coordinated effort involving City officials, with no proper investigation or accountability." (*Id.* at 7.)

Plaintiff alleges that "[d]uring this time, [she] became gravely ill with spinal meningitis and suffered a cerebral spinal fluid leak, requiring surgery. The severity of [her] condition left [her] incapacitated and unable to fully advocate for [herself]." (*Id.* at 8.) "Compounding these challenges was the denial of access to critical court documents. . . . [Plaintiff] was repeatedly denied access to the summary documents related to [her] case. It was only through physically visiting the White Plains court that [she] was able to retrieve these documents." (*Id.*) Plaintiff further alleges that the actions of "Florence . . . played a significant role in obstructing [her] access to justice. His extensive . . . influence within the City of Peekskill's legal and administrative systems suggest a coordinated effort to undermine [Plaintiff's] legal rights and prevent [her] from pursuing [her] case effectively." (*Id.*)

## DISCUSSION

The Court understands Plaintiff's amended complaint and supplement as asserting claims of violations of criminal law, civil claims of violations of Plaintiff's federal constitutional rights under 42 U.S.C. 1983, civil claims of conspiracy to violate those rights under Section 1983 and under 42 U.S.C. § 1985, as well as civil claims under state law.

**A.     Private prosecution**

By citing a federal criminal statute, 18 U.S.C. § 242, Plaintiff seems to seek the federal criminal prosecution of the defendants. If that is the case, the Court must dismiss the claims seeking such relief. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim." (internal quotation marks and citation omitted)).

**B.     Claims under 42 U.S.C. § 1983 against Bongar**

Plaintiff has added Bongar as a defendant in this action via her amended complaint; the Court thus construes Plaintiff's amended complaint and supplement as asserting claims under 42 U.S.C. § 1983 against Bongar. The Court must, however, dismiss those claims. A claim for relief under Section 1983 must allege facts showing that the defendants acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United*

10

*Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)). Private individuals and entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)).

Plaintiff sues Bongar, the President of a Neighborhood Watch Association, who appears to be a private individual. Plaintiff alleges nothing to suggest that Bongar acted as a state actor when she allegedly violated Plaintiff's federal constitutional rights. Accordingly, the Court dismisses Plaintiff's claims under Section 1983 against Bongar for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     Failure to investigate or protect from harm**

To the extent that Plaintiff asserts claims under Section 1983 against Testa and/or Pizzella, in their respective individual capacities, alleging that, while Testa was serving as Mayor of the City of Peekskill, or that while Pizzella has been a City of Peekskill code-enforcement official, either or both of them failed to properly investigate the complaints that Plaintiff lodged with either or both of them, or protect her from harm, the Court must dismiss those claims. There is generally no federal constitutional duty requiring a government official to investigate or protect an individual from harm. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is

11

settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody. Also, [i]t is well established that [t]here is no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted, alterations in original)); *see also Baltas v. Jones*, 3:21-CV-0469, 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021) (The plaintiff "has no 'constitutional right to an investigation of any kind by government officials.'" (citation omitted)); *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an adequate investigation. . . . Accordingly, a failure to investigate is not independently cognizable as a stand-alone claim under Section 1983." (internal quotation marks and citation omitted)).

There are two recognized exceptions to this general rule: (1) "when [a state actor] takes a person into [the state actor's] custody and holds [her] there against [her] will, the Constitution imposes upon [the state actor] a corresponding duty to assume some responsibility for [her] safety and general well-being," *DeShaney*, 489 U.S. at 199-200; and (2) when a state actor affirmatively creates or increases a danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). In this context, the plaintiff must also show that the state actor's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (citation omitted).

Plaintiff does not allege any facts showing that, at the time of the alleged incidents: (1) Plaintiff was in Testa's or Pizzella's custody when Testa or Pizzella failed to properly investigate the complaints that Plaintiff had lodged with either or both of them or failed to protect her from harm, or that; (2) either Testa or Pizzella himself affirmatively created or

increased a danger to her.[8] Plaintiff also does not allege any facts showing that Testa's or Pizzella's alleged behavior was so egregious or outrageous such that Testa's or Pizzella's alleged failure to properly investigate Plaintiff's complaints, or either of those defendants' alleged failure to protect Plaintiff, would shock the contemporary conscience. The Court therefore dismisses Plaintiff's claims under Section 1983 against Testa and Pizzella, in their respective individual capacities, arising from either of those defendants' alleged failure to properly investigate the complaints that Plaintiff allegedly lodged with either or both of them, and/or their alleged failure to protect her from harm, for failure to state a claim on which relief may granted. *See* § 1915(e)(2)(B)(ii).

### D. Claims under Section 1983 against Florence, Testa, and Pizzella in their official capacities

To the extent that Plaintiff asserts claims under Section 1983 against Florence, Testa, and Pizzella, in their official capacities as officers of the City of Peekskill, the Court must dismiss such claims. The Court understands such claims as actually brought against the City of Peekskill itself. *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief."). As the Court indicated in its June 21, 2024 order (ECF 8, at 7-8), to state a claim under Section 1983 against a municipality, such as the City of Peekskill, Plaintiff must allege plausibly that the municipality itself, not merely one or more employees of the municipality, violated Plaintiff's

---

[8] While Plaintiff alleges that the defendants set fire to her home, she alleges no facts showing that Testa or Pizzella himself did so.

13

federal constitutional rights, *see Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978))). Thus, to sufficiently state a claim against a municipality, Plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges nothing to suggest that a policy, custom, or practice of the City of Peekskill caused a violation of her federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against Florence, Testa, and Pizzella, brought against them in their official capacities as officers of the City of Peekskill, which the Court construes as brought against the City of Peekskill itself, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(ii).

**E.     Claims of conspiracy under Sections 1983 and under 1985**

The Court understands Plaintiff's amended complaint and its supplement as asserting claims of conspiracy against the defendants, in their individual capacities, to violate Plaintiff's federal constitutional rights, under Section 1983 and under Section 1985(3). As the court informed Plaintiff in its June 21, 2024 order (ECF 8, at 9-11), to state a claim of conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). To state a claim of conspiracy under Section

14

1985(3), a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of her right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [Section 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted).

Vague and unsupported assertions of a claim of conspiracy, either under Section 1983 or Section 1985, will not suffice to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

Plaintiff's allegations regarding a conspiracy between the individual defendants are conclusory, vague, and without detail. Plaintiff seems to allege, with little or no factual support or causal connection, that the individual defendants conspired to harass and injure her, which included a conspiracy to destroy Plaintiff's Peekskill home by arson. The Court therefore dismisses Plaintiff's claims of conspiracy under Section 1983 and Section 1985, including any under Section 1983 against Bongar also dismissed above, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

F.   **Claims of First Amendment retaliation under Section 1983**

The Court also understands Plaintiff's amended complaint and supplement as asserting claims of First Amendment retaliation under Section 1983 against the defendants, in their

15

individual capacities. To state such a claim, again, as the Court discussed in its June 21, 2024 order (ECF 8, at 8-9), a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

Plaintiff does not plead, in her amended complaint or in its supplement, facts identifying the protected activity that is the basis for her claims of First Amendment retaliation, facts showing that any of the defendants took adverse action against her, and facts suggesting that there was a causal connection between the protected activity and the adverse action. The Court therefore dismisses Plaintiff's claims of First Amendment retaliation under Section 1983 against the defendants, in their individual capacities, including any claims discussed above, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### G.   Remaining claims under Section 1983 against the defendants in their individual capacities

Plaintiff's claims under Section 1983 against the defendants, brought against them in their individual capacities, appear to arise, in large part, from events that allegedly occurred between approximately May 2005 and, at the latest, December 2012, when Bongar ceased the alleged activities that are the subject of this action. Those claims, including any such claims under Section 1983 discussed above, must be dismissed (additionally, if appropriate) as untimely.

Within the State of New York, there is a three-year limitations period for claims brought under Section 1983. *Owens v. Okure*, 488 U.S. 235 (1989) (adopting three-year limitations period in N.Y.C.P.L.R. § 214(5) for claims under Section 1983). Generally, a claim under Section 1983

accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of [her] action.'" *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)). "Although federal law determines when a [S]ection 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of [S]ection 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Id.* at 642 (citation omitted). Under these doctrines, "'[d]ue diligence on the part of the plaintiff in bringing [an] action,' . . . is an essential element of equitable relief." *Id.* (citation omitted). In addition:

> [t]he plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim "have ceased to be operational." If a plaintiff cannot "articulate[ ] any acts by defendants that prevented [him] from timely commencing suit" then he has "failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit."

*Id.* (citations omitted, alterations in original).

Because the failure to file an action within the limitations period is an affirmative defense, Fed. R. Civ. P. 8(c)(1), a plaintiff is generally not required to plead that a claim is timely filed, *see Abbas*, 480 F.3d at 640. *Sua sponte* dismissal (dismissal on the court's own motion) is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). Courts generally must not dismiss claims *sua sponte* "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (internal quotation marks and citation omitted). Yet, when "[t]he

17

problem with [the plaintiff's] causes of action is substantive [and] better pleading will not cure it[,] [r]epleading would thus be futile [and] . . . [leave] to replead should be denied." *Cuocco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Thus, "[c]ourts have denied leave to amend as futile where the claims are barred by applicable statute of limitations." *Holliday v. Artist*, No. 23-CV-2410 (PMH), 2024 WL 2882938, at *4 (S.D.N.Y. June 7, 2024) (quoting *Bergin v. United States*, No. 19-CV-9681 (VSB), 2022 WL 912280, at *14 (S.D.N.Y. Mar. 28, 2022) (internal quotation marks omitted)); *see Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."); *Cruz v. Hastings*, No. 20-CV-4392 (VEC) (BCM), 2022 WL 1050795, at *7 (S.D.N.Y. Jan. 31, 2022) ("[G]iven the insurmountable obstacle posed by the statute of limitations, amendment would be futile. Consequently, no leave to amend should be granted." (citation omitted)), *report & recommendation adopted*, 2022 WL 873197 (S.D.N.Y. Mar. 24, 2022).

    Granting the amended complaint and its supplement the liberal interpretation that they are due, Plaintiff knew or had reason to know of the injuries that are the bases for her claims under Section 1983 against the defendants, in their individual capacities, arising from events that allegedly occurred between approximately May 2005, and December 2012, at the latest, in December 2012, when Bongar ceased her alleged activities that are the bases for this action. Thus, Plaintiff had, at the latest, until three years later (December 2015) to assert claims under Section 1983 against those defendants, in their individual capacities, arising from those injuries. Plaintiff did not file her original complaint, which commenced this action, however, until March 21, 2024, many years after the applicable limitations period for those claims expired, and she has alleged nothing in her amended complaint or supplement that would justify that long a delay in

18

filing suit; she alleges no facts supporting the equitable tolling of her claims under Section 1983. The Court therefore dismisses as untimely Plaintiff's remaining claims under Section 1983 against the defendants, in their individual capacities, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### H.     Claims under state law

The Court understands Plaintiff's claims under state law, including any claims under FOIL against the defendants arising from the alleged failure to provide Plaintiff with copies of emails, as brought under the court's supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed Plaintiff's claims of which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction of any of Plaintiff's claims under state law. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### A.     Further leave to amend is denied

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if it would be futile or when the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d

40, 42 (2d Cir. 1988). Because Plaintiff has failed to cure the deficiencies mentioned in the Court's June 21, 2024 order, and because, for the reasons discussed above, the defects in Plaintiff's amended complaint and its supplement cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order.

Accordingly, the Court denies Plaintiff's Application for the Court to Request *Pro Bono* Counsel as moot. (ECF 6.)

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated: December 11, 2024
       New York, New York

                      /s/ Laura Taylor Swain
                      LAURA TAYLOR SWAIN
                      Chief United States District Judge